THE GARVIN MACHINE COMPANY, Appellant, *v.* THE HAMMOND TYPEWRITER COMPANY, Respondent.

*When parol evidence is competent to explain a written contract — conversations with a deceased person — Code of Civil Procedure, § 829.*

A contract for the manufacture of certain typewriting machines "equal to the complete model machine, to be furnished by the said party of the second part," contained no specification of what constituted a complete model machine.
*Held,* that the surrounding circumstances and the acts of the parties might be resorted to to ascertain what both parties understood by the expression a "complete model machine."
In an action brought by a corporation, the assignee of the original parties contracting to make the machine, to recover for work done under such a contract, testimony of the president of the defendant corporation that, in the course of the negotiations between himself and one of the plaintiff's assignors, since deceased, which led up to the contract, it was repeatedly stated that the machine had two wheels, is competent, where the son of the party with whom the president of the defendant had such negotiations has already testified that he was present when the contract was signed, and sometimes during the prior negotiations, and that upon all those occasions nothing was said in respect to the number of type wheels. Such testimony should be limited to the general transaction or communications as to which the son testified.
The question, which would have been raised by a request that the testimony of the president of the defendant be limited to the occasions when the son was present, was not considered.

Appeal by the plaintiff, The Garvin Machine Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 22d day of May, 1894, upon the report of a referee dismissing the complaint and awarding the defendant an affirmative judgment.

The action is brought by the plaintiff, as assignee of the firm of E. E. Garvin & Co., composed of Hugh R. Garvin and M. Garvin, to recover various sums of money for work done for, and materials furnished to, the defendant. Both plaintiff and defendant are domestic corporations. The answer denied many of the allegations of the complaint as to the work and materials and their value, and set up payment of many of the items claimed, and counterclaims for overcharges by the firm of Garvin & Co., and failure by them to fulfill the obligations subsisting on their part toward the defendant. The referee found that the plaintiff had made out a cause of action for the sum of $234,172.82, but that the defendant was entitled to a credit of $234,652.63. He gave a judgment for the defendant for the excess, and dismissing the complaint.

Among the items of the plaintiff's claim was one for $23,297.10 for 8,335 type wheels furnished to the defendant. The latter claimed that the price of 5,093 of these wheels was included in the price of certain typewriting machines made by the firm of Garvin & Co. for the defendant under a contract executed on November 12, 1884. By this contract the firm of Garvin & Co. agreed to manufacture for the defendant "five thousand Hammond typewriter machines, equal to the complete model machine to be furnished by the said party of the second part (the defendant)." The plaintiff claimed that but one type wheel was to be furnished with each machine — the defendant, that two went with each of them under the contract. The referee found in favor of the defendant on this issue, and did not allow the plaintiff for the type wheels delivered with the machines provided for by the contract, and certain others, in excess of the contract number, but delivered and received under its terms.

Further facts are stated in the opinion.

*Frederic R. Kellogg* and *Frederick Seymour*, for the appellant.

*R. D. Benedict*, for the respondent.

BARRETT, J.:

The substantial question in this case is whether the contract called for two type wheels as a part of each of the typewriting machines to be manufactured and delivered thereunder. The contract reads that the plaintiff's predecessors agree to manufacture for the defendant 5,000 Hammond typewriter machines, " equal to the complete model machine" to be subsequently furnished. This complete model machine was to be so furnished by the defendant to the plaintiff's predecessors. The plaintiff contends that this language is ambiguous and that the machine was complete with but one type wheel. The defendant, on the other hand, claims that the contract fails to define the elements of a complete machine, and it insists that it was the understanding of the parties that a complete machine was a machine with two type wheels. The learned referee took the latter view of the case, we think, correctly. What should go with a typewriting machine to make it complete was not specified in the contract. It was, therefore, competent to resort to the surrounding circumstances and the acts of the parties to get at what they both understood to be a complete machine, and what they meant by this expression as it was used in the contract. The question was an open one on the face of the instrument, whether a second type wheel was an appurtenance to a complete machine or an addition thereto. It does not settle the question to say that a machine with but one type wheel is complete in a material sense. The second wheel may not be physically attached to the machine, and yet, in a trade sense, it may be part of it. The question is : What did the parties understand to be a complete machine ? What, in other words, did the one party understand that he was to give; the other, that he was to receive ? When that is made clear by the surroundings the contract is made clear. We think, therefore, that the evidence to which in general the appellant objects was properly admitted. The finding thereupon — that the contract called for the second type wheel to be delivered with each machine — is amply supported by the evidence. We can add nothing to the opinion of the referee upon this head. He points out clearly and in detail the considerations which led him to make the finding in question. We might add still other considerations pointing unerringly in the same direction. But this is unnecessary. Suffice it to say,

upon a full review of all the evidence, we think no other conclusion could · possibly have been arrived at than that both parties clearly understood that the complete machine referred to in the contract was a machine with the appurtenances of two type wheels.

It remains to consider one or two questions as to the admission of evidence. The referee permitted the president of the defendant corporation, Mr. Hammond, to testify that, in the course of his negotiations with Mr. Hugh Garvin, deceased, it was repeatedly stated that the machine had two wheels. This was objected to " as a communication that is not allowed under the provision of the Code with respect to deceased parties — section 829." We think this testimony was admissible under the particular circumstances of the case. Mr. Eugene Garvin, who was a son of Mr. Hugh Garvin and a party in interest, deriving that interest from his father, was called as a witness for the plaintiff. He thereupon testified that he was present at the time the contract was signed and was also present sometimes during the prior negotiations between his father and Mr. Hammond, and that upon all those occasions nothing was said in respect to the number of type wheels. The referee held, and we think properly, that, as Mr. Eugene Garvin had thus been examined in relation to this personal transaction or communication between Mr. Hugh Garvin and Mr. Hammond, the latter could also be examined upon the same subject. If the plaintiff desired to confine Mr. Hammond's examination to the precise occasions referred to by Mr. Eugene Garvin, it should have made a special point on that head and asked that it be so limited. And in that connection it should have made it clear what Mr. Eugene Garvin intended to convey when he said that he was " sometimes " present during the prior negotiations. The question now sought to be raised would then have been properly presented — a question as to which we express no opinion. We think, however, that Mr. Hammond's testimony should have been limited to the general transaction or communications as to which Mr. Eugene Garvin had been interrogated, that is, the transaction or communications prior to the signing of the contract. But upon a review of the evidence we are satisfied that, while at this point the rule was possibly infringed, the plaintiff was not prejudiced. In fact, eliminating from the case all of Mr. Hammond's testimony

with regard to his personal communications with Mr. Hugh Garvin, the weight of evidence is yet overwhelmingly in favor of the defendant's view of the contract.

What the appellant mainly complains of in this testimony is Mr. Hammond's statement relative to his emphatic protest to Mr. Hugh Garvin against the extra charge which the plaintiff made for the second type wheel. This was after the contract was made, and the plaintiff consequently insists that, even if Mr. Eugene Garvin's previous testimony opened the door to communications had prior thereto, the question of the subsequent charge was a new subject of communication as to which the rules stated applied. Apart from the clear absence of prejudice, as already suggested, we find that Mr. Hammond's protest against the extra charge was made to Mr. Hugh Garvin's superintendent, McClatchie, and was by the latter conveyed to his principal. This is McClatchie's testimony upon the point : "Q. Up to that time you had no idea that the second type wheel was going to be charged for at all? [Objected to as irrelevant; objection overruled; plaintiff excepts.] A. I did not. When that bill was presented I think Mr. James Hammond was in Europe, and not at home. After he came back he spoke to me about that bill. Q. Don't you remember that in that conversation Mr. Hammond insisted that that charge for an extra type wheel was not proper — in substance? [Objected to as improper, irrelevant and incompetent and governing the terms of a written contract; objection overruled; plaintiff excepts.] A. I think he may have said so. Q. But don't you remember that he did? A. I know he spoke about the charges being extortionate, and I think he spoke of the second wheel. Q. As being one of those that were extortionate? A. Yes, sir."

McClatchie's testimony, to the effect that he communicated this to Mr. Hugh Garvin, is as follows: "Q. After you had this conversation with Mr. Hammond, did you not have a talk with Mr. Garvin about the matter? A. The late Mr. Garvin? Q. Yes, I mean the late Mr. Garvin? [Objected to as incompetent and immaterial, and also as relating to communications between the witness and a party deceased; objection overruled; exception by plaintiff.] A. Yes, sir. Q. You did have a conversation with him? A. Yes, sir. Q. What was that conversation? A. I told him of Mr. Ham-

mond coming into my room and speaking of the bill, what we have talked over here, and told him all about what Mr. Hammond had told me.   Q. Told him what you told Mr. Hammond also?   A. I don't know what I said to Mr. Garvin ; I don't remember.   Q. Don't you remember that you repeated the conversation as well as you remembered it?   A. Yes, sir."

It thus appears that Mr. Hugh Garvin was fully apprised of Mr. Hammond's protest, and the latter's testimony upon that head was simply cumulative.   Such testimony, therefore, could have played no serious part in the general result, which was arrived at upon plainly competent testimony to almost precisely the same effect.

There is nothing in the point that McClatchie was permitted to express his opinion that the second wheel went with the machine. This testimony was given upon cross-examination, and was irresponsive to a question which was proper upon cross-examination. That question was this : " Do you remember telling him (Hammond) that that was your opinion also (referring to Hammond's claim that the extra charge was extortionate)?"   The answer was, "I don't remember telling Mr. Hammond directly, but that was my opinion. I had previously expressed my opinion in regard to the second wheel."   It will be observed that, even if the question were improper, the answer, so far as it was responsive, was harmless. The witness simply did not remember.   All else was irresponsive, and no motion was made to strike it out.   The second question asked directly what opinion the witness had expressed to Hammond's inspector, one Rogers.   But this question was only objected to as irrelevant, an objection which was plainly untenable, for the opinion which the plaintiff's superintendent expressed to the defendant's inspector upon a disputed question as to the propriety of the charge, while not crucial, was clearly relevant.   It was certainly proper to be brought out upon the cross-examination of one who was called in support of the plaintiff's right to make the charge.

The other questions presented are trivial, and call for no special consideration.

The judgment was right and should be affirmed, with costs.

RUMSEY, WILLIAMS, O'BRIEN and INGRAHAM, JJ., concurred.

Judgment affirmed, with costs.